The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688

MS. KEETA FOX

EXHIBIT

2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

December 7, 2022

Ms. Keeta R. Fox

RE: Long Term Disability (LTD) Benefits
Papa John's International, Inc
Claim #: 10310112

Dear Ms. Keeta Fox:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond August 3, 2022.

**<u>Initial Claim Decision</u>**

You submitted a claim for your absence from work as of February 4, 2020. Your LTD benefits began on August 4, 2020, therefore the change in definition of disability occurred on August 4, 2022, and to receive benefits beyond 24 months you must be disabled from any occupation as defined in the Policy. Benefits beyond August 3, 2022, were denied as the evaluation concluded you were no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated August 4, 2022. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt that your claim should not have been denied, and submit additional information to support your claim. Specifically, you were advised to submit the following information: In your request for review please include the following documentation: *All documentation from Dr. Potts, Dr. Yee, Dr. Villanueva, Dr. Blackburn, Dr. Briley and / or any of your other treating providers that would show evidence that you do meet the definition of disability continuously from Any Occupation as of August 4, 2022 and beyond, such as: test results with positive findings, such as an MRI or CT Scan, office visit notes that document physical exam findings, hospitalization records, lists of prescription medications with their start date/dosages, a detailed treatment plan which would outline a description of your specific restrictions and limitations, and any physical or occupational therapy records. It may also be helpful for you to provide any of the following types of records / reports: An Independent Medical Examination (IME) or Functional Capacity Evaluation (FCE) report with valid medical evidence indicating your current capacity and functionality A full copy of your Social Security Administration (SSA) disability benefit claim file including any IMEs that may have been performed on behalf of the SSA. You should also provide any additional information that you feel will support your claim.*

**Appeal**

An email was received dated August 8, 2022, documenting your diagnoses of small fiber neuropathy and mast cell activation syndrome.

> *An information flyer entitled "This is Sjogren's…." was received.*
>
> *Coronavirus updates were received from The Social Security Administration including the listing section for Immune System Disorders – Adult.*
>
> *A polysomnography report was received from Norton Sleep Center, by Dr. Josephine Mei, dated August 8, 2022. The study was completed July 11, 2022.*

An email was received dated August 10, 2022, outlining your diagnoses, and treating providers.

In an email on August 11, 2022, you documented having cervical stenosis treated by Dr. Villanueva requiring physical therapy which was not beneficial.

Correspondence was sent to you dated August 15, 2022, providing you until September 14, 2022, to provide any additional documentation for your appeal.

> *Medical documentation was received from New Horizons Integrative Medicine , Dr. Kimberly Lentz. You were seen July 7, 2022, for ongoing evaluation and treatment considerations. You reported some mild symptoms for about ten years. Your diagnoses included Lyme disease and chronic Epstein Barr Virus. You had a phone consult on July 28, 2022, to discuss test results. It was documented that your primary issues were Bartonella and EBV and your treatment plan was pharmaceutical treatment.*
>
> *Labs and diagnostic reports were received.*
>
> *A letter was received from Dr. Pamela Yee, Blum HealthMD, dated August 18, 2022. It was documented that you consulted with Dr. Yee from September 15, 2021, through May 25, 2022, and you were diagnosed with several conditions including mast cell activation syndrome, postural orthostatic tachycardia, and tick born infections. Dr. Yee provided a medical summary of your findings.*
>
> *A Disability Determination Services review by Dr. Jamaal Richie, dated January 6, 2022, revealed your chief complaints were Sjogren's syndrome, chronic fatigue syndrome, fibromyalgia, neuropathy, cecal volvulus, cervical stenosis, carpal tunnel syndrome, small intestinal bacterial overgrowth, and gastritis. Your examination noted antalgic gait, stable station, mild difficulty getting on and off the examination table, no swelling, erythema, atrophy, anatomic deformity, spasm, tenderness, or active rheumatoid arthritis. You exhibited 3/5 bilateral grip strength and 4/5 bilateral lower extremity strength with limited range of motion and no focal neurological deficits. Imaging of the knee noted grade 3 advanced degenerative joint disease with no findings of fractures or notable pathology. It was opined that you were limited in your ability to sit, stand, and ambulate by history, with*

*findings supported by the physical examination. It was documented that you required the use of an ambulatory assist although one was not present on examination. You did not demonstrate significant limitations in performance of fine motor task. You were documented to be dependent on others for most activities of daily living. It was opined that your physical deficits and medical conditions may make it difficult to perform certain tasks and to maintain a job.*

*A letter was received from Papa Cares, Dr. Greg Potts, dated August 29, 2022, noting your medical diagnoses of Sjogren's syndrome, mast cell activation syndrome, small intestine bacterial overgrowth, postural orthostatic tachycardia syndrome / orthostatic intolerance, Lyme disease and chronic Epstein Barr Syndrome, fibromyalgia, chronic fatigue syndrome and other conditions such as carpal and cubital tunnel syndrome, cervical spine stenosis and bilateral knee osteoarthritis. Your symptomology was documented and it was noted that the severity and frequency vary day to day with significant overlap in symptoms. It was opined that you would be severely limited in your ability to be gainfully employed due to episodic flu-like symptoms and fever, frequent trips to the restroom, exposure that might trigger or worsen one or more of these conditions, profound fatigue, and physical discomfort. It was opined that you are awarded full disability.*

*A letter was received from Kimberly Lentz dated August 25, 2022, noting you have been under her care since July 2022 and you are currently on treatment for positive of Borellia, Bartonella and Epstein Barr Virus. It was documented that you are experiencing flares of your symptoms which are debilitating at times. Your symptoms include chronic fatigue, nerve pain, fever, joint pain, muscle pain, polyneuropathies, and insomnia. It was documented that complicating your recovery was other diagnoses including mast cell activation syndrome, Epstein Barr Virus (EBV) and postural orthostatic tachycardia (POT). The symptoms that accompany these diagnoses include syncope, tachycardia, headaches, nausea, debilitating fatigue and dysregulation of your temperature, pulse, and blood pressure. You were struggling to go up and down stairs, and your symptoms were noted to be sporadic and unpredictable. It was documented that it would be best if you could undergo treatment and recover at home. Dr. Lentz indicated that she did not see how any limitations at the workplace would enable you to continue working with your current diagnoses.*

*A letter was received from Dr. Steven Stern dated January 27, 2021, noting you were a patient in the Arthritis Center and being helped for underlying immunologic disorder. It was documented that your condition involves multiple organ systems and is permanent in nature. Dr. Stern requested that you be given disability based on your condition and other conditions diagnosed by the Mayo Clinic. It was opined that you will not be able to work at your job or any job.*

On September 12, 2022, you confirmed that your appeal submission was complete.

On September 14, 2022, we received an email asking if the medical documentation from Social Security Disability was received. We sent to you on September 14, 2022, a detailed list of all medical documentation received since August 4, 2022.

**<u>Initial Evaluation</u>**

A medical review was received from Dr. Jeffery Grimes, board certified in internal medicine, dated May 26, 2020. Dr. Grimes was able to speak to Dr. Potts who reported that you had significant fatigue believed to be due to “sick building syndrome”. You were noted to have significant mold in your home. Your EMG was reportedly normal. You had not been seen by Dr. Potts in three months due to COVID-19. You were communicating via phone and seeing a “functional medicine” nurse practitioner. It was indicated that you had an appointment at the Cleveland Clinic in “functional-integrative” medicine and you were seeing a psychiatrist. It was reported that your psychiatrist did not believe that your condition was primarily a mental health issue. Dr. Potts did not believe that you were capable of performing your high stressed job. You were noted to be improving but not at a level of having functional capacity.

Dr. Grimes was able to speak to Anna Stone, nurse practitioner. Ms. Stone practices “functional medicine”. She reported that mold in your home had made you ill. She indicated that this started in December when you spent five hours in a damp basement. She believed that the mold had caused a chronic inflammatory response syndrome. It was reported that your major symptoms were fatigue, depression, left hand tremor and constipation. She admitted that you were very sad and depressed. She believed that you would be able to return to work in 30-60 days and you were very motivated to return to work.

Dr. Grimes did not attempt to reach Dr. Jaimin Shah, neurology. It was noted that you were referred to psychiatry pain rehabilitation center and found to have an essentially normal physical examination with normal EMG.

Based on the medical documentation, Dr. Grimes opined that you did not have an impairing diagnosis. Your comorbid diagnoses included cervical degenerative disc disease, lumbar degenerative disc disease and fatigue. Dr. Grimes documented that you had seen multiple providers for your conditions and symptoms. Although you had an abnormal cervical MRI with degenerative changes, mild spinal stenosis, and foraminal stenosis, it was opined that there was no documentation that would support any impairment. You had a normal EMG of upper and lower extremities. In addition, there was no recent physical examination to support any impairment. You had seen pulmonary, gastroenterology, neurology, and rheumatology with diagnosis of diverticulosis, colon polyps, and bulbous emphysema with post inflammatory changes of the lung. However, there was no documentation of any of your conditions translating to or supporting any impairment. Therefore, it was concluded that restrictions and limitation were not applicable from May 3, 2020 forward.

Dr. Grimes also concluded that the medical documentation did not support central sensitization syndrome or systemic inflammatory response syndrome.

A medical review was received from Dr. Robert Swotinsky, board certified in occupational medicine, dated June 29, 2020.

Based on the medical documentation, Dr. Swotinsky concluded that the primary impairing diagnoses were cervical spinal stenosis and lumbosacral spinal stenosis with comorbid diagnoses of small fiber sensory neuropathy. Dr. Swotinsky opined that due to spinal stenosis you were limited to lifting and carrying no more than 25 pounds and restricted from overhead activities until July 22, 2020.

You were diagnosed with small fiber sensory neuropathy by skin biopsy in February 2020. Your

records failed to show abnormalities in balance and muscle function. Your cervical MRI from January 2020 revealed foraminal narrowing. Dr. Swotinsky concluded that the medical documentation lacked examination findings that clarified the degree of functional impairment involving the cervical spine. It was opined that it was not unreasonable to restrict heavy and overhead lifting and 25 pounds lifting restriction was recommended with avoidance of overhead work related to your cervical and lumbar spinal stenosis. Restrictions and limitations were supported for six months after the January 2020 or until July 2020. Inflammatory rheumatologic disease was ruled out as the rheumatologist found that you did not have inflammatory rheumatologic disease. Mold related disease and gastroparesis were also ruled out.

On July 27, 2020, you reported you ceased work due to a number of medical conditions and symptoms. You indicated your worse condition was small fiber neuropathy with pain and tingling in the fingers and legs. You also reported heart palpitations that were also concerning as well as gastroparesis.

On August 14, 2020, you reported that Dr. Shah could be removed from your medical records request as this provider had very limited exposure to you and you had no plan of returning to this provider. You reported that Dr. Potts would have all information from Dr. Shah. You were advised that medical documentation was still pending from Dr. Kemp and Dr. Young.

Medical documentation was received from Dr. Young, Cleveland Clinic, from May 2020 to August 2020. The medical reflected you were seen for mold and Lyme disease. It was noted that you would be working on your diet plan discussed with the nutritionist allowing for gentle detoxification and decreasing inflammation.

Your claim was reviewed in a consultation with Dr. Paul Stander, board certified in internal medicine, dated September 22, 2020. Dr. Stander concluded that the medical records demonstrated some limited impairment in your ability to reliably perform your usual life and work activities from February 1, 2020, to the present and ongoing indefinitely. It was indicated that you would need some accommodation for rest periods of a few minutes several times per hour when using your hands and fingers to operate a computer keyboard or other activities for prolonged periods. No other restrictions and limitations were documented.

An Occupational Analysis dated September 29, 2020, concluded that your occupation of Vice President was performed at a sedentary physical demand level in the national economy with occasional reaching, handling, fingering and frequent keyboarding.

Based on the medical review findings and the demands of your occupation, it was determined that you were not precluded from performing the demands of your occupation and a denial determination was rendered on October 5, 2020.

Additional medical documentation was received for review and consideration. The October 2020 determination was appealed.

A medical review was completed by Dr. Oluyemisi Awokbokun, board certified in internal medicine and rheumatology, dated January 22, 2021. Attempts were made to reach Dr. Potts; no contact was established.

Based on the review of the medical documentation, Dr. Awokbokun concluded the primary diagnosis from a rheumatological standpoint was Sjogren's syndrome with comorbid conditions of gastroparesis, volvulus, and Lyme disease.

Dr. Awokbokun opined considering the entire clinical picture, the provided documentation did not support a level of impairment that translated into restrictions and limitations from August 2020 forward from a rheumatological standpoint. It was documented that you had a long and complicated medical history positive for multiple gastrointestinal disorders. It was stated that you had a history of Lyme disease, irritable bowel syndrome, and gastroparesis and had been utilizing holistic medications and supplements. You also had been exposed to ongoing mold issues. On October 15, 2020, you were seen by a rheumatologist and was found to meet the criteria for Sjogren's syndrome. It was stated that they discussed possible trials of medications for ongoing redness present in your hands and you were advised to discuss possible IVIG with neurology. However, although you had a multitude of symptoms and had undergone surgical intervention for a cecal volvulus in November 2020, the provided documentation was limited from a rheumatological standpoint to support restrictions and limitations.

An addendum report was received by Dr. Awokbokun dated February 8, 2021, after contact was established with Dr. Potts. Dr. Potts reported that you were not formally diagnosed with a rheumatic disorder until the last quarter of the year in 2020 after having visited multiple physicians. He reported that you were formally diagnosed with Sjogren's syndrome and you were gradually improving on immunosuppressive therapy. It was mentioned that you did have the complication of needing emergency bowel surgery in November with limitation of no work for six weeks post-surgery. Dr. Potts reported that you were not able to work full time.

Dr. Awokbokun opined considering the provided documentation and the peer to peer conversation with Dr. Potts, total impairment was supported and you had restrictions and limitations from August 2020 to the present from a rheumatological perspective based on the new diagnosis of Sjogren's syndrome and ongoing symptomology to allow for ongoing medical management, rest, and adjustment. Dr. Awokbokun opined that it was reasonable to re-assess your functionality in March 2021.

Another addendum was completed June 2, 2021, by Dr. Awokbokun. Attempts were made to reach Dr. Gregory Potts and Dr. Steven Stern; no contact was established.

The additional medical documentation indicated that you were hospitalized in November 2020 for severe abdominal pain and diagnosed with cecal volvulus. You had exploratory laparotomy with surgical resection of the cecum. You were seen by rheumatology in on March 10, 2021. You were utilizing Azathioprine with no difference in your symptoms. You endorsed ongoing joint pain and difficulty walking.

Dr. Awokbokun concluded that the additional documentation indicated that you continued to struggle with your Sjogren's syndrome as well as comorbid diagnoses. Dr. Awokbokun indicated that the medical documentation did not clearly indicate the presence of ongoing functional deficits and given the lack of functional improvement with medications, total work restriction was extended until August 1, 2021, to allow submission of additional documentation to support the need for ongoing restrictions and limitations.

An addendum report was completed by Dr. Awokbokun dated March 7, 2022. Dr. Awokbokun opined that there was no impairing diagnosis identified. You were documented to have comorbid conditions of carpal tunnel syndrome, positional orthostatic hypotension syndrome, Sjogren's syndrome and mononucleosis.

Dr. Awokbokun concluded taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, the supportive level of impairment did not translate into restrictions and limitations from August 1, 2021, to present and beyond for any duration. While records indicated that you had a history of Sjogren's syndrome, with reports of various aches and pains, gastrointestinal issues, possible carpal tunnel syndrome, cervical stenosis, POTS, and mononucleosis, the treating physician did not elaborate on how any of these diagnoses and/or symptoms were specifically affecting your ability to function on a daily basis. There were some reports of fatigue, slight reduction in range of motion of the neck as noted on July 27, 2021, with varying reports of uncontrollable diarrhea, bloating, and flatulence. However, aside from some reports that fatigue could be debilitating, there was no supporting evidence that the conditions individually or in combination were impairing you from completing activities of daily living or work-related duties. It was opined that the physician would need to elaborate further on how each of these conditions were affecting you and preventing you from working in any capacity.

Previously, it was determined that you required total restriction from August 2020 with an evaluation to be conducted by March 2021 due to a new diagnosis of Sjogren's syndrome. The total restrictions were then extended until August 1, 2021, to allow for the submission of additional documentation to support the need for ongoing restrictions and/or limitations. However, based upon the currently provided information, while it was noted that you continued to treat symptoms of Sjogren's syndrome, the medical evidence did not support that you were significantly impaired because of these conditions. You reported fatigue and claimed to have low-grade fevers from time to time, but did not elaborate on how these symptoms were preventing you from completing activities of daily living or work-related duties.

It was documented while you were reportedly diagnosed with POTS, based on a tilt table test and the NASA lean score on November 8, 2021, there were no other records supporting that this condition was causing significant dysfunction. Therefore, you did not require restrictions or limitations because of POTS. The mast cell activation diagnosis likewise was not found to have caused impairments. The small intestinal bacterial overgrowth (SIBO) was also not impairing. While you reported episodes of uncontrollable diarrhea with fecal urgency, this was not found to be occurring on a routine basis requiring restrictions and limitations. As for mononucleosis (reportedly diagnosed in the summer), the treating physician did not specify that this was causing you difficulties in functioning. Therefore, while Sjogren's will likely require treatment for flareups, the provided documentation did not elaborate on how this condition was specifically affecting you on a daily basis and preventing you from engaging in the work environment. The treating physician did not indicate that you needed to work on a part-time basis or could work full-time with or without work restrictions and/or limitations. It as opined that the treating physician would need to provide a breakdown of what diagnoses were causing impairments and specify how they affected your ability to use your upper and lower extremities, your spinal regions, your cardiovascular function, your cognition, etc.

It was further documented that peer-to-peer conversation had been unsuccessful and was needed in order to gain a better perspective regarding how you were functioning throughout the day.

Unsuccessful attempts were made to reach Dr. Steven Stern, Dr. Pamela Yee, and Dr. Gregory Potts. It was concluded that until the treating physician could provide this information, there was no support for impairments.

An additional medical review was completed by Dr. Joseph Pachman, board certified in occupational medicine, dated March 18, 2022.

Based on the review of the medical documentation, Dr. Pachman concluded the primary impairing diagnoses were anxiety, depression, orthostatic intolerance and Sjogren's syndrome with comorbid conditions of cervicalgia, irritable bowel syndrome and chronic fatigue.

The medical history was remarkable for an intestinal torsion that resulted in a partial colon resection on November 16, 2020. Your primary complaint appeared to be related to fatigue. As a result, a sleep study was performed by a pulmonologist with results consistent with mild sleep apnea. You also had complaints of headache and at least one episode of reported vision loss. Ocular migraine was diagnosed by ophthalmologist Dr. Burns. MRI of the brain was reportedly noncontributory.

You also had complaints of gastrointestinal symptoms, including constipation, flatulence, urgency, and bloating. You were diagnosed with small intestinal bacteria overgrowth at the Mayo Clinic, and irritable bowel syndrome by your alternative medicine physician Dr. Yee. Dr. Stern noted on November 5, 2021, that "gut symptoms are improving".

The Mayo Clinic also diagnosed orthostatic intolerance with a report of a positive tilt test, potentially consistent with a complaint of intermittent dizziness. As per Dr. Yee (in her note on December 29, 2021) you believed that the Mayo Clinic attributed your symptoms to be "in her head". You also obtained an extensive evaluation at the Cleveland Clinic. You were diagnosed with Sjogren's syndrome by rheumatologist Dr. Stern, with support from the results of antibody testing. (Although this condition can be responsible for fatigue, your primary medical provider, Dr. Potts agreed that this condition would generally not result in medical support for activity restrictions going forward). Dr. Yee referenced Mayo Clinic reporting that this condition was in remission, although this is not clear from the medical records.

Dr. Potts also noted that you were treating with a psychiatrist once per month, and Dr. Yee noted in her December 29, 2021 note that you had received psychiatric treatment for "years". (The psychiatry notes were not available for review). Dr. Potts referenced stress related to long work hours as potentially contributory in an attending physician discussion, and there was also multiple reference in the records to home related stressors. The Cleveland Clinic also referenced "severe mood swings". Your attending gastroenterologist noted a "heavy alcohol intake", with reference to multiple daily drinks, but there was later reference from providers that your alcohol consumption had decreased. You continued to be prescribed medication for anxiety, depression, and insomnia. Anxiety and depression were listed as comorbid conditions.

You were also treated by your spine surgeon Dr. Villaneuva, who had diagnosed cervical stenosis. No reference to frank myelopathic signs were noted. The MRI report of the cervical spine on January 22, 2020, was notable for mild to moderate stenosis at three levels, without a frankly impinging lesion. MRI of the lumbar spine was likely notable for likely age-related degenerative disc changes. You were diagnosed with small fiber neuropathy at one point but this was also

apparently ruled out at Mayo Clinic. You had also treated with hand surgeon Dr. Blackburn with an initial diagnosis of carpal tunnel syndrome, despite some lack of supporting physical examination findings and negative electrophysiological results. On December 21, 2020, Dr. Blackburn noted that you were 70% improved (regarding your report of pain and tingling in your wrists) with continued relief, and "able to (now) sleep without braces". There was also reference in the records to a diagnosis of erythromelagia. This was documented to be another rare condition that can result in burning pain and skin redness. On November 5, 2021, Dr. Stern noted that ".skin symptoms are much improved", with treatment that included antihistamines and proton pump inhibitors.

Other diagnoses that had been suggested to explain the variety of reported symptoms included reactivation of Epstein Barr Virus, mastocytosis (a rare disorder that can result in systemic conditions), an in intestinal bacterial overgrowth syndrome, and chronic inflammatory response syndrome. The latter diagnosis was hypothesized by your alternative provider, Dr. Yee, to be the result of mold exposure. The records indicate that you attributed mold exposure at home to much of your conditions. However, on December 29, 2021, Dr. Yee documented that you were "feeling better and not sure why", and that you were functioning fine.

Dr. Pachman opined that you had full-time work capacity with restrictions and limitations of only occasional activity in very dry environments without a humidifier, no activities at heights or climbing, and no moving weights greater than 20 pounds occasionally and 10 pounds frequently.

Surveillance was conducted on April 8, 2022, and April 9, 2022, and no activity was observed.

A copy of Dr. Pachman's report was shared with Dr. Pamela Yee, Dr. Ethan Blackburn, Dr. Wayne Villanueva, and Dr. Steven Stern. Your providers were provided until May 25, 2022, to review the report and provide a response.

A response was received from Dr. Steven Stern dated January 27, 2021. Dr. Stern noted you have been a patient in the Arthritis Center to manage your underlying immunologic disorder involving multiple organ system manifestations and is permanent in nature and will continue to last the rest of your life and well past a year. Dr. Stern asked for consideration for disability based on your conditions. Dr. Stern opined that you were not able to work at your job or any job during the last 12 months.

Medical documentation was received from Dr. Denise Winland, psychiatry, from February 2019 through February 2022. A letter was received dated April 28, 2021, noting you were seen since 2004 for treatment of mild depression and anxiety. You were seen for supportive psychotherapy and medication management. It was documented that you had depression and grief, coping with the loss of function and loss of your ability to perform at high levels. You were prescribed Duloxetine for treatment of mood symptoms, physical pain, and fatigue. You were also prescribed Ambien for insomnia. You were treated monthly. A functional mental status evaluation form was received dated February 9, 2022.

Medical documentation was received from Dr. Stern. You were seen March 16, 2022, for follow up for Sjogren's syndrome and new diagnoses. You were status post complete dental extraction due to infections. You reported your teeth were sent to testing and Lyme disease was confirmed. It was documented that your Western Blot test had two positive bands but your ELISA was negative. Your small intestine bacterial growth was a little better. You were started on supplements and you

reported that it was making a difference. You endorsed pain that was waking you up at night and worsening hip pain which you blamed on a bulging disc. You were also noted to have left posterior pelvic misalignment which you were self-correcting several times a day. It was suggested that you wear a pelvic belt. Your diagnoses included systemic involvement of connective tissue and abnormal weight loss. You were also noted to have cecal volvulus with resection and appendectomy showing pre-cancerous lesions, cervical stenosis, sick building syndrome from water damage, chronic sensitization syndrome, mast cell activation syndrome, CIBO syndrome and Epstein Barr Virus reactivation syndrome with overwhelming fatigue. You were instructed to follow up in six months.

A copy of Dr. Pachman's report was sent to Dr. Lauren Briley, gastroenterology, and Dr. Stern. Dr. Briley and Dr. Stern were provided until July 22, 2022, to review the report and provide a response.

An Attending Physician Statement was received from Dr. Ethan Blackburn noting diagnoses of left lateral epicondylitis, and bilateral carpal tunnel syndrome. It was documented that you had left elbow pain and intermittent numbness and tingling in the bilateral hands. You were noted to be able to continuously lift various weights, stand, walking, sit, balance, stoop, kneel, finger, crouch, crawl, grasp, climb, push, pull, bend and reach. It was documented that you were able to return to work full time on July 18, 2022. Your visits were received from June 2019 through April 25, 2022. You presented with left elbow pain described as burning and aching with left hand numbness. You were treated previously with bracing and steroid injections. Your last injection was November 29, 2021, with some benefit reported. You were continuing to wear night splints with continued reports of numbness and tingling. Your EMG from November 2019 revealed bilateral median nerve neuropathy at the wrists and left ulnar nerve neuropathy.

Medical documentation was received from Pinnacle Physical Therapy from February 2022 to June 2022 for left lateral epicondylitis, cervical degenerative disc disease and cervical strain.

An additional medical assessment was received from Dr. Pachman dated July 25, 2022, considering the updated medical from Dr. Stern, and Dr. Blackburn. Records from Dr. Winland were acknowledged; however, no psychiatric restrictions were indicated and it was documented that you agreed that you did not have a psychiatric impairment.

Dr. Pachman opined that the updated information did not alter the prior medical assessment's findings. It was documented that based on Dr. Winland's report, anxiety and depression were no longer recommended as an impairing diagnoses. Dr. Pachman did conclude given the persistence of symptoms despite maximal medical evaluation and treatment, the recommended restrictions and limitations outlined in the March 2022 assessment could more than likely be considered permanent.

Your claim was previously reviewed by a vocational consultant, for a transferrable skills analysis based on your prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined and was determined that you could perform the following occupations: Controller, and Vice President.

**Appeal Evaluation**

During the review of your appeal, your claim was reviewed by Dr. Louise Banks, an independent physician who is board certified in occupational and internal medicine. Attempts were made to

reach Dr. Pamela Yee, and Dr. Ethan Blackburn; no contact was established.

Dr. Lentz reported on October 5, 2022, that she has only seen you once and that was July 7, 2022. She advised that she did not do functional assessments on her patients.

Dr. Villaneuva was contacted on October 4, 2022, Sierra returned the call stating that Dr. Villaneuva had advised that he would not be commenting on the claim.

Dr. Stern's office was contacted on October 3, 2022, and October 4, 2022. Amanda informed Dr. Banks that Dr. Stern was on vacation. Dr. Banks asked to speak with a physician assistant and was transferred to Vicky who reported that she was not comfortable commenting on the case.

Dr. Potts reported on October 5, 2022, that he was no longer your primary care physician. He reported that you had severance from your previous employer and as a part of your severance agreement you were allowed to continue seeing Dr. Potts, company physician, for 18 months after your severance. Dr. Potts advised that he would no longer comment on your functional status.

Based on his review of the medical records, Dr. Banks concluded that there were no functional impairing diagnoses from August 3, 2022 forward. Dr. Banks noted that you had been advised to pursue surgical treatment of carpal tunnel and cubital tunnel syndrome . You had some cervical spinal degenerative disease on imaging, and Dr. Wayne Villanueva has advised that at some point you would likely require a C5 corpectomy. However, Dr. Banks noted the clinical examinations and the results of electrodiagnostic studies do not indicate that this is currently a functionally impairing condition. You were advised to pursue epidural steroid injections for treatment of neck pain complaints, and it was documented that you did not seem to have pursued this. Dr. Lentz diagnosed you with Lyme disease. Dr. Banks noted that it is not evident that you meet CDC criteria for Lyme disease. You seemed to have had an episode of Epstein-Barr recurrence serologically, and Dr. Lentz advised that he was treating you with Valacyclovir for this. You had been advised to seek treatment or opinion from an Infectious Disease consultant and Dr. Banks noted it does not seem that you have done this. Dr. Banks indicated that he was not certain that the treatment for alleged Lyme disease or Epstein-Barr virus was indicated in this case. The recommendations for topical treatments for sicca syndrome are very reasonable. It was noted that at one time, you were advised that you should be on immunosuppressive therapy for Sjogren syndrome. It was noted that you seemed to have been intermittently compliant with this. It was opined that you do not seem to have functional impairment from a rheumatologic disease from August 3, 2022 forward.

In regard to the diagnoses of mast cell activation syndrome, postural orthostatic tachycardia syndrome (POTS), small intestinal bacterial overgrowth (SIBO), fibromyalgia, spinal stenosis, knee pain, irritable bowel syndrome and Epstein-Barr virus, Dr. Banks reported the following:

> *"i. **Mast cell activation syndrome** is treated appropriately in this case with antihistamines and proton pump inhibitors, and there is no indication on documented clinical examinations that the insured has functional impairment from this diagnosis.*
>
> *ii. **POTS**. There was no definitive diagnosis made of POTS. There was an increase in heart rate with the NASA lean test documented by one of her providers; however, there was no concomitant drop in blood pressure, and as one consultant said, anxiety seems to have played a role in the increase in heart rate. There is no evidence that the insured has*

*functional impairment or even meets standard criteria for a diagnosis of POTS. Evaluation was never escalated to include standard tilt table testing, and treatment was never escalated to include thigh-high compression stockings or use of appropriate medications. This is not because of an oversight on the part of her treating physicians but rather because she does not seem to have required any escalation in evaluation or treatment related to that diagnosis.*

*iii. **SIBO, small intestine bacterial overgrowth**. A consultant at the Mayo Clinic opined that this was likely a contaminant. The insured has received appropriate treatment for that diagnosis in the form of Xifaxan. She was also advised by one consulting gastroenterologist to trial some rotating antibiotics; however, she declined. There is no evidence that the insured has functional impairment from a diagnosis of SIBO or even that she meets standard criteria for that diagnosis.*

*iv. **Fibromyalgia syndrome**. This is not a functionally impairing diagnosis.*

*v. **Spinal stenosis**. There is evidence that the insured has some degenerative disc disease in the cervical spine; however, there is no evidence clinically or by electrodiagnostic study that she has neural compromise which would result in functional impairment from this diagnosis. She has elected not to pursue the recommended treatment of epidural steroid injection.*

*vi. **Knee pain**. The insured reports knee pain and there does not seem to be any consistent functional impairment from this diagnosis. The disability evaluator opined that she had significant osteoarthritis; however, he was the only documented evaluator to have that finding. On 03/16/2021 Samuel Carter, MD, an orthopedic surgeon, evaluated the insured and found that she had full range of motion, normal strength, and evidence of mild osteoarthritis. He advised conservative treatment with steroid injections on an as-needed basis and physical therapy. In follow up of 04/16/2021, Dr. Carter advised that the insured could pursue MRI in order to evaluate for a possible meniscal tear and/or pursue viscosupplementation. She seems to have declined either, and her functional knee exams are documented as unremarkable. Therefore, no functional impairment and no work activity restrictions are attributable to that diagnosis.*

*vii. **Irritable bowel syndrome**. This is not a functionally impairing diagnosis.*

*viii. **Epstein-Barr virus reactivation**. There is no evidence in the records provided for this review that the insured has functional impairment as a result of that diagnosis. Documented clinical examinations are unremarkable."*

Correspondence was sent to you dated October 19, 2022, providing a copy of Dr. Banks report for your review. You were provided until November 7, 2022, to review the report and provide a response.

As part of your response the following information was received.

An email dated October 19, 2022, asking how Dr. Banks responded to your provider stating that you were unable to work 40 hours per week, and how did Dr. Banks address Dr. Jamall Richie statement

noting that your deficit may make it difficult to perform certain task and maintain a job (Social Security Rep). You noted that five providers have indicated that you are unable to work 40 hours per week including Dr. Stern, rheumatologist. You asked for a definition of functional impairment. You also asked that diagnoses the reviewer disagreed with. You provided your list of diagnoses and treatment. You asked that your communication was in writing and you noted that you would be providing all related documentation from Doherty, Celle, Keane and Associates.

As Dr. Jamall Richie's report was an Independent Medical Assessment by the Social Security Administration, this report has been reviewed and considered in Dr. Banks assessment; however, this report was utilized by the Social Security Administration in their assessment of your capacity based on their guidelines for Social Security Disability. Our assessment is based on our independent review off the entire claim file including the medical documentation contained within your Short Term and Long Term Disability claims.

Another email was received asking Dr. Banks to reach out to Dr. Potts, Dr. Yee, Dr. Stern and Dr. Lentz to describe her reasons for not being able to work 40 hours per week. You also asked that we reach out to your new rheumatologist, Dr. Jacqueline Smith.

An email was received dated October 27, 2022, indicating that you were attaching the qualifications for chronic fatigue syndrome under Social Security. You indicated that when you combine the diagnosis of chronic fatigue syndrome, fibromyalgia, orthostatic intolerance, and chronic, long lasting EBV, you should qualify. You asked, "how can I work when I have flu like symptoms on a regular basis?".

> *Information was received titled "Providing Medical Evidence for Individuals with Myalgic Encephalomyelitis / Chronic Fatigue Syndrome (ME /CFS)"*
>
> *Information was received titled "Disability and Sjogren's Syndrome – Filing for SSDI and SSI"*

Correspondence was sent to you dated October 27, 2022, noting we had received a letter from Dr. Potts dated August 29, 2022, and the last actual medical documentation that we had was from October 5, 2021, and December 2, 2021. We asked that if there was additional documentation to provide to please provide this information to our office for review. We noted in regard to additional contact with your treating providers, we would wait until all information was received and we would forward all information to be reviewed and ask for additional provider contact. You were advised that you had until November 7, 2022, to provide any additional documentation for review.

On October 28, 2022, you provided an email noting that Dr. Potts agreed to speak to Dr. Banks to give an update through the date that he was your provider. You noted the third party attorney had requested medical from Dr. Potts and he was getting inundated with request. You asked for an extension of time as Dr. Potts was on vacation until November 7, 2022.

In response to how your employer described functional impairment, a copy of the LTD policy was forwarded for your review on October 28, 2022. On November 1, 2022, you reported that the LTD policy expired before you were able to open it, you asked that it was resent.

An addendum report was provided from Dr. Banks dated November 2, 2022, noting he had received

two calls from your providers.

On October 26, 2022, Dr. Stern, rheumatologist, returned the call to Dr. Banks. He reported that his last encounter with you was on March 16, 2022. He reported that you "didn't fit the mold" of any particular rheumatologic diagnostic category and he could not offer an opinion on restrictions from the standpoint of his specialty. He noted that it was his understanding that you had a congenital frontal lobe problem and pulmonary fibrosis; however, he did not comment specifically on any functional impairment for those diagnoses.

On October 27, 2022, Dr. Pamela Yee, returned the call to Dr. Banks. She reported that her last encounter with you was via telemedicine in May 2022. Dr. Yee stated that you had "multiple things going on" and that given your frequent symptomatic flares of gastrointestinal problems, mast cell activation syndrome and recent Epstein Barr Virus reactivation, she felt that you could not perform work on a sustained, predictable basis. Dr. Yee also noted that she thought that you had a recent tilt-table test with diagnosis of POTS.

Dr. Banks noted that the two provider's discussions did not change his opinion in the prior report. He did note that it may have been helpful to see records regarding the frontal lobe, current pulmonary situation, and tilt table results.

Correspondence was sent to you dated November 2, 2022, noting that you could provide Dr. Potts' assistance information and when we have all medical documentation, we can ask for additional provider contact and reach out to the assistant. You were advised that you had until November 14, 2022, to provide all additional documentation that you would like considered.

The November 2, 2022 addendum report from Dr. Banks was sent for your review on November 4, 2022. You were advised that you had until November 14, 2022, to provide any additional documentation for your appeal. It was outlined that additional documentation may be needed regarding your frontal lobe, current pulmonary situation, and tilt table results.

On November 5, 2022, you provided the Mayo testing from October 2020. You also noted that you would be seeing a new neurologist in Lou KY for an update on small fiber neuropathy and rheumatologist, Dr. Jacqueline Smith, wants to start IVIG treatment. You indicated that this is one of your worst symptoms with significant ongoing pain.

> *Autonomic reflex screen was received from the Mayo Clinic. It was concluded that there was no evidence of autonomic failure. There was evidence of symptomatic orthostatic tachycardia which can be seen in deconditioning, dehydration, a constitutional trait and in hyper-adrenergic states (including anxiety). It was note that the observed resting sweating activity may favor the later.*

An email was received dated November 8, 2022, noting you had two appointments with Dr. Potts. You attached the notes from the March 25, 2022 visit. You also noted that you had another visit in July 21, 2022 and Dr. Potts had no record of that appointment.

> *Your March 25, 2022 visit noted you needed refill of Tramadol and Restasis as well as recheck on EBV. You were prescribed Cyclosporine Emulsion ophthalmic drops and Tramadol 50 mg orally twice as day if needed. Your assessment noted lumbar back pain*

*with radiculopathy affecting the lower extremity, bilateral dry eyes, unspecified chronic fatigue, other specified disorders involving the immune mechanism, and Epstein Barr infection. Your Tramadol was for treatment of your low back pain and your eye drops were for treatment of dry eye. The handwritten note indicated flu symptoms. Your diagnosis listed included Sjogren's syndrome, chronic fatigue, lumbar radiculopathy, and chronic EBV.*

An email was received dated November 8, 2022, providing a copy of the January 16, 2020 head CT. You commented on the response from Dr. Stern was "very off base and inaccurate, getting way outside of his lane / expertise on commenting on frontal lobe problems and pulmonary fibrosis".

*Your head CT noted small areas of benign appearing mineralization in both cerebral hemispheres, no acute process identified. Your findings documented bilateral basal ganglia calcification with additional areas of calcification / mineralization in the bilateral cerebral whit matter with at least three small dense areas of mineralization. There was no evidence of acute infarction, hemorrhage, midline shift or mass effect.*

*Your CT heart calcium score without contrast dated December 6, 2019, revealed a total coronary artery calcium score of zero, no identifiable atherosclerotic plaque. Under findings it was noted that there were small blebs present in the right lower lobe and some mild right lower lobe fibrosis.*

On November 10, 2022, you provided the following documentation:

*An article from the Washington Post, by William Schwalbe dated June 28, 2020.*

*A flyer titled "This is Sjogren's", from the Sjogren's Foundation*
*Coronavirus (COVID-19) Updates – FEMA and State Resource for Hurricane Ian. Listing for 14.00 Immune System Disorders – Adult was provided from the Social Security Administration.*

*A duplicate copy of the "Providing Medical Evidence for Individuals with Myalgic Encephalomyelitis / Chronic Fatigue Syndrome (ME / CFS)"*

In your email you noted you were unable to find a functional impairment definition in the Papa John's LTD Policy. You noted you found "own occupation" and "any occupation". You also noted that Sjogren's diagnosis should be included vs SICCA as it has now been given it's own diagnosis code.

You provided a copy of Dr. Banks report with handwritten comments and suggested revisions. You also included for review and consideration:

*An EGD report from the Louisville Endoscopy Center dated February 21, 2020. The history and present illness section noted you were diagnosed with oral candidiasis and you were placed on Nystatin by your primary care provider. You reported problems swallowing with denial of pain or food getting stuck. You were also noted to have vaginal candidiasis. You were noted to have some weight loss and some dry heaves. Your impression was normal mucosa. It was documented that you had a significant amount of*

*retained food in the stomach, gastroparesis was suspected.*

*A final pathology report was received dated March 17, 2020, noting left thigh skin biopsy noted significant reduced epidermal nerve fiber density consistent with small fiber neuropathy. Left calf skin biopsy was significant for reduced epidermal nerve fiber density, consistent with small fiber neuropathy.*

On November 11, 2022, you provided a copy of the letter from Dr. Stern dated January 27, 2021. You indicated that the letter was consistent with all conversations subsequent to that date. You also noted this was inconsistent with the conversation with Dr. Stern on October 26, 2021, that indicated that you did not fit the mold of any rheumatological diagnosis and he could not give his opinion on restrictions. You noted the letter clearly defined limitations.

*The letter from Dr. Stern dated January 27, 2021, noted the Arthritis Center helps manage your underlying immunologic disorder involving multiple organ system manifestations. It was noted this was permanent in nature and will last the rest of your life. It was noted that consideration was given for disability based on this condition and the other conditions diagnosed by the Mayo Clinic. It was opined that you were not able to work at your job, or any job, during the last 12 months while under his care.*

On November 14, 2022, you asked for another copy of the LTD Policy. This was forwarded for your review.

On November 16, 2022, correspondence was sent to you outlining all medical documentation that had been received since the October 19, 2022 correspondence providing a copy of Dr. Banks report. You were advised that the additional documentation had been provided to Dr. Banks for his review and consideration. He was also asked to reach out to Dr. Potts' assistant at the number provided to establish contact.

An addendum report was provided from Dr. Banks indicating that the additional documentation did not alter his original report findings. It was noted that the autonomic reflex screen of October 16, 2020, was reported as showing no evidence of autoimmune failure and was positive for symptomatic orthostatic tachycardia without hypotension, and this was ascribed as likely secondary to anxiety. The articles from The Washington Post and from the Social Security Administration do not provide any information about yourself and therefore, it was opined that this information did not change the prior opinion.

Arrangements were made with Dr. Potts assistant and contact was established on November 21, 2022. Dr. Potts noted he was not sure why he was asked to speak to the reviewer. He noted it was his understanding that the reviewer was requesting additional medical information from him. Dr. Potts noted he was unable to provide any additional documentation. He reported as far as he could recall he had not seen you in three to four months and when he checked his records, he reported it was probably March 2022 since he last saw you in person. He noted he did not have any additional medical documentation or opinions to provide. Dr. Potts noted he was not aware of whether you saw a neurologist and to his knowledge the infectious disease workup was unrevealing.

In review of the original report completed by Dr. Banks, Dr. Banks did not support functional impairment from August 3, 2022, to the present. His report further outlined that the diagnoses of

mast cell activation syndrome, postural orthostatic tachycardia syndrome, small intestinal bacterial overgrowth, fibromyalgia, spinal stenosis, knee pain, irritable bowel syndrome and Epstein-Barr virus also did not impose functional impairment. This means that these conditions would not impose work related restrictions and limitations that would preclude work capacity or your ability to function.

In response to your request for the policy's definition of functional impairment. Per the policy the definition of "Disability" is defined as

***"Disability" or "Disabled"*** *means:*

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

- ***i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and***
- *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

Based on the findings of Dr. Banks report not supporting ongoing impairment, restrictions, or limitations beyond August 3, 2022, you would not satisfy the definition of disability per the policy and no further benefits would be payable beyond August 3, 2022.

We are aware that your claim for Social Security Disability Income benefits is being processed. It should be noted that any ruling by the Social Security Administration does not determine entitlement to benefits under the terms and conditions of the Papa John's International, Inc.'s Group Disability Income Policy.

**Conclusion**

We conducted a thorough and independent review of your entire claim. In summary, we acknowledge that you may have continued to experience some symptoms associated with your conditions beyond August 3, 2022. However, the available information does not contain physical or mental examination findings, diagnostic test results or other forms of medical documentation supporting your symptoms remained of such severity that they resulted in restrictions or limitations rendering you unable to perform the duties of the occupations identified as being within your functional capacity and vocational skills after that date.

Having carefully considered all of the information submitted in support of your claim, our position remains that proof of your continued disability in accordance with the Policy provisions after August 3, 2022, has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions

that state, in part:

*"**Disability**" or "**Disabled**" means:*

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

*iii. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*iv. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*2. With respect to Covered Persons employed as pilots, co-pilots, and crewmembers of an aircraft:*

*“**Disability**” or “**Disabled**” means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation.*

*"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"**Own Occupation**" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

*"**Any Occupation**" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by The Lincoln National Life Insurance Company and to submit any additional information he wished to be considered as part of the appeal. The Lincoln National Life Insurance Company has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by The Lincoln National Life Insurance Company and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Papa John’s International, Inc.’s Group Disability Income Policy contains the below provisions:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

1. *until 60 days after Proof of claim has been given; or*
2. *more than three years after the time Proof of claim is required.*

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

Your employer's policy has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is August 4, 2025.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any The Lincoln National Life Insurance Company rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by The Lincoln National Life Insurance Company are based on the provisions outlined in Papa John's International, Inc.'s Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact The Lincoln National Life Insurance Company to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jerronda King
Claims Resolution Specialist
Phone No.: (888) 437-7611 Ext. 14674
Secure Fax No.: (603) 334-0401